2205

Constance M. HENDERSON, Appellant v.
Bennie Lee PUCKETT, Respondent.

(447 S.E. (2d) 871)

Court of Appeals

*W. Paul Culbertson,* Laurens, *for appellant.*

*Bennie Lee Puckett, pro se.*

Submitted April 12, 1994.

Decided July 18, 1994.

GOOLSBY, Judge:

This is a contempt action resulting from a father's failure to pay child support for a fourteen-year period. The mother, Constance M. Henderson, based her contempt claim on a 1978 divorce decree that required the father, Bennie Lee Puckett, to support the parties' daughter. The family court declined to find the father in contempt, holding that a 1979 order temporarily granting custody of the child to the maternal grandparents "superseded" the support obligations imposed on the

father by the 1978 decree. We disagree with this holding and therefore reverse and remand the issue of contempt.[1]

The parties were divorced in 1978. The divorce decree, which was dated April 11, 1978, granted the mother custody of the parties' daughter, who was then about four years old, and ordered the father to pay the mother $40.00 a week in child support through the office of the clerk of court. Neither party appealed this order.

About a year after the divorce, the maternal grandparents filed an action in which they sought custody of the child. The record of this appeal does not contain the pleadings filed in that action.

The family court held a temporary hearing on the custody matter and took extensive testimony. Both the mother and the father were parties to the action and were present at this hearing.

On April 27, 1979, the family court issued a temporary order granting temporary custody of the child to the maternal grandparents. The order also directed the Department of Social Services to investigate the homes of the mother and the grandparents and to make a report to the court. It further granted both the mother and the father visitation with the child. The order mentioned nothing about the father's child support obligation imposed by the prior divorce decree.

According to the mother, she took physical custody of her daughter soon after the temporary order was issued. The mother further maintained her daughter remained in her care until her daughter reached majority.

The Department of Social Services never conducted the investigation ordered by the family court and the family court never issued a final order in the grandparents' custody action. In fact, the family court by administrative order struck from the active docket the "support case" against the father on June 23, 1980, subject to its being placed back on the active docket upon proper request. An employee from the clerk's office testified that such an order is typically issued when the clerk is unable to locate a person required to pay support for service of process in contempt proceedings.

On November 3, 1992, the family court granted a petition

---

[1] We decide this case without oral argument, having determined it would not aid the court in its decision.

by the clerk to restore the 1978 "support case" to the active roster on the ground that the mother had furnished a new address for the father. On November 10, 1992, the clerk issued a rule against the father requiring him to show cause why he should not be held in contempt for failure to pay child support as ordered by the family court.

As we noted above, the family court refused to find the father in contempt.

A trial court's determination regarding contempt is subject to reversal where it is based on findings that are without evidentiary support or where there has been an abuse of discretion. *Hicks v. Hicks*, 280 S.C. 378, 312 S.E. (2d) 598 (Ct. App. 1984). An abuse of discretion can occur where the trial court's ruling is based on an error of law. 16 S.C. Juris. *Appeal and Error* § 124 at 31-32 (1992).

Here, there has been an abuse of discretion in that the family court's determination of the contempt issue rested on an error of law. That error of law is the family court's holding that the order for temporary custody superseded the prior support order.

As best we can determine from the record before us, the only issue before the family court at the 1979 temporary hearing was the question of who should have custody of the parties' daughter. The family court made no ruling on the father's support obligation. Indeed, no such ruling was requested by anyone. Notwithstanding the fact that the same family court judge presided at all proceedings at issue in this appeal, we hold there was no basis for him to conclude that a temporary order addressing only the issue of custody would have any effect on a previously issued final order for child support. *See* 56 Am. Jur. (2d) *Motions, Rules, and Orders* § 29 (1971); 60 C.J.S. *Motions & Orders* § 65g (1969) (an order will not ordinarily be construed as going beyond the motion pursuant to which it was made).

We therefore reverse the family court on the issue of contempt and remand the issue for redetermination.

Reversed and remanded.

HOWELL, C.J., concurs. CONNOR, J., dissents in a separate opinion.

CONNOR, Judge (dissenting):

I respectfully dissent. I would affirm the trial judge who issued all three orders involved. The majority basically holds the family court judge erred in interpreting his own orders. I believe he was in a much better position to analyze what he meant than we are.

As noted by the majority, a 1978 divorce decree required the father to pay child support for one child. Approximately one year later, the mother's parents sought and gained custody of their granddaughter. This order was silent concerning child support from either parent.

The only issue before the trial judge in this action was whether the child's father should be held in contempt of court for failing to obey the 1978 decree. He clearly ruled the father was not in contempt.

Contempt results from the willful disobedience of a court order. In a proceeding for contempt for violation of a court order, the moving party must show the existence of the order and the facts establishing the respondent's noncompliance. *Brasington v. Shannon*, 288 S.C. 183, 341 S.E. (2d) 130 at 131 (1986). The record must clearly and specifically reflect the contemptuous conduct. *Id.*; *Whetstone v. Whetstone*, 309 S.C. 227, 420 S.E. (2d) 877 (Ct. App. 1992). Here the judge properly ruled as a matter of law the family court could interpret its own orders. In doing so, he found his 1979 order, which changed custody from the mother to the grandmother, superseded his 1978 divorce decree, which ordered the father to pay child support to the mother. The pleadings in the 1979 case are not in the record, but in essence the trial judge's ruling means he considered support at that hearing and specifically did not award any. Therefore, he held there was no order in existence on the issue of child support.[1] The judge further stated: "[I]t was appropriate for the Respondent (father) to rely upon the ruling and order of this court in 1979, and he has not been under court order to support the child since that time." He also reasoned it was logical and customary that support not be paid by the child's father to her mother when cus-

---

[1] A person may not be held in contempt where an order commands nothing of him or her. *Welchel v. Boyter*, 260 S.C. 418, 196 S.E. (2d) 496 (1973). The order must contain language that is clear and certain. *Id.*

tody was changed to a  third party.[2]

Moreover, a person cannot be held in contempt in a Family Court Rule to Show Cause proceeding unless the clerk's affidavit clearly identifies both the court order which the respondent has allegedly violated, and the specific acts or omissions which constitute noncompliance. *Brasington*, 288 S.C. at 184, 341 S.E. (2d) at 131. The burden of proof remains with the moving party until these have been shown; only then does the burden shift to the respondent to establish his or her defense and an inability to comply with the order. *Id.* The clerk's affidavit in this case was deficient in both respects. It states:

> Personally appeared before me <u>Betty W. Allen,</u> who being duly sworn, states under oath that she is the custodian of the child support/alimony[3] records in the Office of the Clerk of Court of Laurens County, South Carolina, and that according to these records, the Defendant, <u>Bennie Lee Puckett,</u> *has failed to make alimony payments* as required by Order of the Family Court of Laurens County, South Carolina, dated <u>Oct 27, 1992:</u> and that the amount due as of <u>4-30-92,</u> 19—, is <u>$30,694.00.</u>
>
> . . . .
>
> It appears that you have not 'obeyed' the Order(s) of the Court as described above, *by your failure to make alimony payments as ordered. . . .*

---

[2]In his order the trial court criticized the mother for waiting so long to bring this action. He noted, however, laches was not pleaded in this case. The record reveals the child was eighteen years old and attending Piedmont Tech at the time of this hearing. As the trial judge noted, the father could still be ordered to assist with the child's higher education upon a proper showing. The wife had made no attempt to collect support for nearly fourteen years. The family court judge found the father had lived in the same close community (Joanna, South Carolina) as the wife for the past ten years. In *Hallums v. Hallums*, 296 S.C. 195, 371 S.E. (2d) 525 (1988), the Supreme Court held a former wife was not entitled to sixteen years of retroactive child support where the child had reached majority and the wife had failed to enforce child support during the child's minority. Furthermore, the *Hallums* court noted the large aggregate sum of child support ($8,490) would place a substantial hardship on the father. In the present case, the arrearage totaled $30,694. *See also McSwain v. Holmes*, 269 S.C. 293, 237 S.E. (2d) 363 (1977), where the Supreme Court rejected the mother's claim for three years past child support on the same basis; *cf. Terry v. Lee,* — S.C. (2d) —, —, 445 S.E. (2d) 435, — (1994), affirming laches as an additional sustaining ground in dismissing action to partition military retirement twenty-seven years after divorce decree had been entered, and over ten years after the husband's right to the retirement arguably arose.

[3]The word "alimony" in this sentence only has been partially stricken out.

(Italicized portions show emphasis added; underscored portions show handwritten insertions to form.)

Not only does the clerk's affidavit fail to identify the specific acts or omissions which constitute noncompliance, it mistakenly identifies failure to make alimony payments as the underlying basis for the rule to show cause. More importantly in light of the overall confusion concerning which court order was in effect in this case, it identifies a court order dated October 27, 1992, as the order allegedly being violated. There is no court order in this case with that date. The Clerk of Court's Petition to Restore the case to active status was dated October 27, 1992; the order restoring the case was dated November 3, 1992.

Even if the 1979 order did not supersede the 1978 decree, there was at least an ambiguous situation in several respects. The father could not have had a clear understanding of which order was in effect. Neither did he have the opportunity of even knowing which order he had allegedly violated. The father could not, on the record before us, have willfully violated the order.

A determination of contempt is within the trial judge's sound discretion and contempt should be imposed only sparingly. *Hicks v. Hicks*, 280 S.C. 378, 312 S.E. (2d) 598 (Ct. App. 1984). The trial judge's determination is subject to reversal only where it is without evidentiary support or amounts to an abuse of discretion. *Id.* In reversing the trial judge's finding in this case, the majority holds the trial judge committed an error of law amounting to an abuse of discretion in determining the 1979 order superseded the 1978 order. The majority remands the case for a redetermination on the issue of contempt. However, assuming their position is correct, the father could not be held in contempt under these circumstances. Accordingly, it is futile to reverse and remand for a redetermination of a finding that 1) has already been made by the trial judge, 2) was within his sound discretion, and 3) is fully supported by the record.

For those reasons, I would affirm the trial court.[4]

---

[4]My analysis controls all of the mother's arguments except her complaint the 1979 order was invalid because it was never filed by the clerk. In this argument, she misapprehends the judge's ruling that the order was *mis-filed* by the clerk.