1984

Martha L. FRANK, Respondent v. Donnie R. FRANK, Appellant.
(429 S.E. (2d) 823)

Court of Appeals

*James W. Boyd,* Rock Hill, *for appellant.*

*Forrest C. Wilkerson,* Rock Hill, *for respondent.*

Heard Feb. 23, 1993.

Decided April 5, 1993.

GARDNER, Judge:

Donnie R. Frank (the husband) and Martha L. Frank (the wife) were married in 1984. The parties were divorced in 1991 based on a one-year separation. The trial court awarded the marital home and the wife's engagement ring to the wife. He also ordered all debts and remaining marital assets be divided between the parties. The trial court found the husband in contempt for violating a restraining order. The husband appeals from the trial court's rulings on the property division and contempt. We reverse and remand.

## FACTS

The marital home was given to the wife by her parents in 1981. At that time, the marital home bore a mortgage of

$21,000. In 1986, while the parties were separated, the wife refinanced the house to consolidate bills. Subsequently, the parties reconciled and started living together again at which time they obtained home equity loans of $30,000.

The proceeds from the home equity loans went largely to furnishing and remodeling the house. The parties used $7,200 of the loan for a boat. At the time of this action, only $447 in interest had been paid on the loan. The monthly mortgage payments are $481 per month. The total of mortgages on the house is $74,000. The house is listed for sale at $190,000. During the seven years of marriage, the husband earned approximately $72,000 and the wife earned about $137,000.

## ISSUES

The husband argues that the trial court erred by: 1) ruling the marital home was not transmuted and remained the separate property of the wife; 2) ruling the engagement ring was the wife's separate property; 3) failing to award the husband the personal property he acquired before the marriage; 4) failing to allocate the personal property and the debt; and 5) finding the husband in contempt of a restraining order.

## DISCUSSION

This Court has jurisdiction to find the facts according to its own view of the preponderance of the evidence. *Phillips v. Phillips*, 290 S.C. 455, 351 S.E. (2d) 178 (Ct. App. 1986).

First, the husband argues that the trial court erred by ruling that the record did not show an intent to transmute the marital home into marital property. We agree.

It is well settled that in certain circumstances, nonmarital property may be transmuted into martial property if it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property. *Johnson v. Johnson*, 296 S.C. 289, 372 S.E. (2d) 107, *cert. denied* 298 S.C. 117, 378 S.E. (2d) 445 (Ct. App. 1988). Property can be transmuted, even though one spouse acquires legal title to property prior to the marriage, if both parties discharge the indebtedness. *Canaday v. Canaday*, 296 S.C. 521, 374 S.E. (2d) 502 (Ct. App.

1988); *Wyatt v. Wyatt*, 293 S.C. 495, 361 S.E. (2d) 777 (Ct. App. 1987).

In the instant case the wife owned the marital home prior to the marriage. Both parties, however, signed a $30,000 promissory note securing a mortgage on the house, and, therefore, both parties are liable for the discharge of the debt. Even though the home equity loan has not been repaid and the husband contributed very little in the way of financial support to the marital home, he remains liable on the note. Accordingly, we hold that, to the extent that the husband is liable for the home improvement loan, the marital home is transmuted. We reverse and remand the transmutation issue to the trial court so that it may consider the marital home in the equitable distribution of the marital estate.

Next, the husband contends that the judge erred by concluding that the engagement ring was the wife's property. The husband gave the wife an engagement ring in 1981. The ring had belonged to his grandfather and father. The husband claims he and the wife had an understanding that "if anything happened" he would get the ring back. The wife denied this understanding.

An antenuptial gift of an engagement ring is the recipient's separate property. *McClerin v. McClerin*, — S.C. —, 425 S.E. (2d) 476 (Ct. App. 1992). Furthermore, this Court will not ordinarily disregard the factual findings of the trial judge who saw the witnesses, observed their demeanor, and was in a better position to make credibility determinations. *See Husband v. Wife*, 301 S.C. 531, 392 S.E. (2d) 811 (Ct. App. 1990). Thus, we affirm the trial judge's ruling on the wife's right to the engagement ring.

The husband also argues that the court erred in failing to equitably apportion the remaining marital assets and debts of the parties. The record reflects that the trial judge ordered the parties' boat be sold and the proceeds be applied "pro rata" to the debts listed on the parties' financial declarations. He also ordered that the remaining assets be divided 65 percent to the wife and 35 percent to the husband. However, the marital debts were neither specifically identified nor specifically apportioned to either party.

S.C. Code Ann. section 20-7-472 (1976) provides:

In making apportionment, the court must give weight in such proportion as it finds appropriate to all of the following factors:

\* \* \* \* \* \*

(13) liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage;

\* \* \* \* \* \*

(15) such other relevant factors as *the trial court shall expressly enumerate in its order.* (Emphasis added.)

We hold that the statute implicitly requires that marital debt, like marital property, be specifically identified and apportioned in the equitable distribution. Accordingly, we hold that upon remand the trial court shall specifically identify and apportion the marital debt.

Additionally, the husband contends that the trial court failed to award him certain personal property. First, we note that the wife gave the husband opportunity to take anything he wanted from the house in her absence. At trial, the husband presented a list of personal property that he wished to retrieve from the marital home. The trial court did not specifically discuss the items on this list.

We find the husband's handwritten list to be illegible. Based on the insufficiency of the record, it is impossible for this Court to properly address this issue. Moreover, counsels for both parties conceded at oral argument that a settlement had not been attempted on this issue and that such negotiations would be forthcoming. Accordingly, we find this issue is without merit and do not address it.

Finally, the husband appeals the trial court's finding of contempt. There is of record a restraining order issued by the trial court on March 7, 1991, ordering the husband to stay off the wife's home and work premises. The wife asserts that she served the husband with an order and rule for contempt for violating the restraining order on March 22 and 24, 1991 and on April 1, 1991. The husband stated he did not go on the wife's property after he received the restraining order.

This Court will not disturb a trial court's decision on contempt unless it is without evidentiary support. *Pirkle v. Pirkle*, 303 S.C. 266, 399 S.E. (2d) 797 (Ct. App. 1990). "[A] person cannot be brought into contempt for not complying with an order or decree of court unless personal service thereof has been made on him or unless he has had actual notice of the making of such order or of the rendition of such judgment or decree." 17 C.J.S. *Contempt* § 18 (1963). There is no evidence of record that the husband received notice of or knew of the restraining order at the time of the violations. We, therefore, reverse the finding of contempt.

For the foregoing reasons, we reverse and remand for further proceedings consistent with this decision.

Reversed and remanded.

SHAW and BELL, JJ., concur.